UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MITCHELL MIRAGLIA; | ) | |
| FRANCIS FALLS; and | ) | |
| THAD TATUM, | ) | Case No: |
| | ) | |
| | ) | Judge: |
| | ) | |
| PLAINTIFFS, | ) | Magistrate Judge: |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| NEW ORLEANS CITY; | ) | |
| BOARD OF COMMISSIONERS OF | ) | |
| THE NEW ORLEANS REGIONAL | ) | |
| TRANSIT AUTHORITY; | ) | |
| TRANSDEV SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

Now comes MITCHELL MIRAGLIA, FRANCIS FALLS, and THAD TATUM, (collectively "PLAINTIFFS"), individuals, by and through their undersigned counsel, who hereby file this Complaint and sue NEW ORLEANS CITY (hereinafter "NEW ORLEANS"), BOARD OF COMMISSIONERS OF THE NEW ORLEANS REGIONAL TRANSIT AUTHORITY (hereinafter "NORTA"), and TRANSDEV SERVICES, INC. (hereinafter "TRANSDEV") (collectively "DEFENDANTS"), for injunctive and declaratory relief, damages, and attorneys' fees and costs pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Americans with Disabilities Act" or "ADA"), and the Rehabilitation

1

Act of 1973, <u>29 U.S.C. § 794</u> *et seq.* ("Rehabilitation Act") and states as follows:

## BACKGROUND

1.  On its website, the City of New Orleans claims that it is "serious about the ADA."[1]

2.  Over twenty-five years after the passage of the Americans with Disabilities Act, the City of New Orleans and its political entities continue to provide inadequate transportation service for individuals with mobility-related disabilities. DEFENDANTS are violating the ADA by failing to provide an accessible transportation service on its most famous and popular transportation line, St. Charles Avenue.

3.  Despite their stated commitment to the ADA, DEFENDANTS have and continue to violate the ADA by failing to provide equal access to the St. Charles Avenue Streetcar Line for disabled patrons, including PLAINTIFFS.

4.  Upon information and belief, defendant NEW ORLEANS owns the St. Charles Avenue Streetcar Line.

5.  Upon information and belief, defendants NORTA and TRANSDEV jointly operate and are responsible for the St. Charles Avenue Streetcar Line.

6.  Upon information and belief, defendant NORTA has entered into a delegated management contract with TRANSDEV under which TRANSDEV operates the transportation services of NORTA on NORTA's behalf.

7.  Despite their stated commitment to the ADA, DEFENDANTS have failed to bring the St. Charles Streetcar Line into compliance with the requirements of the ADA and are discriminating against persons with mobility-related disabilities, including PLAINTIFFS.

---

[1] See Exhibit "A"

8.      As will be alleged in further detail below, DEFENDANTS have actual knowledge of their obligations under the ADA. Despite actual knowledge of their obligations under the ADA, DEFENDANTS are nonetheless failing to comply with the ADA.

9.      Specifically, PLAINTIFFS allege that DEFENDANTS are failing to comply with the ADA in three ways: (1) DEFENDANTS are not providing physical access to the disabled to the St. Charles Avenue Streetcar Line; (2) DEFENDANTS have failed to adopt alternative measures to ensure that persons with disabilities are afforded an equal opportunity to benefit from the public transportation on St. Charles Avenue in the most integrated setting appropriate; and (3) DEFENDANTS are failing to comply with the new construction and alteration requirements of the ADA regulations.

10.     As a result of DEFENDANTS' ongoing failure to comply with their obligations under the ADA and the Rehabilitation Act, PLAINTIFFS MITCHELL MIRAGLIA, FRANCIS FALLS, and THAD TATUM have and continue to experience discrimination under Title II of the ADA and the Rehabilitation Act of 1973.

## JURISDICTION AND PARTIES

11.     This is an action for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq*., (see also 28 U.S.C. § 2201 and § 2202), and for PLAINTIFFS' claims arising from 29 U.S.C. §794 *et seq*. (Rehabilitation Act). This Court is vested with original jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the DEFENDANTS' Property, which is the subject of this action, is located in Orleans Parish, Louisiana.

13.     PLAINTIFFS MITCHELL MIRAGLIA, FRANCIS FALLS, and THAD TATUM are residents of the State of Louisiana, Orleans Parish.

14.     MR. MIRAGLIA is a qualified individual with a disability under the ADA. MR. MIRAGLIA is a quadriplegic afflicted with cerebral palsy.

15.     Due to his disability, MR. MIRAGLIA is substantially impaired in several major life activities and requires a wheelchair for mobility. Specifically, MR. MIRAGLIA is unable to walk, stand, or use his legs without assistance.

16.     MR. FALLS is a qualified individual with a disability under the ADA. MR. FALLS is afflicted paraplegia as a result of a spinal injury.

17.     Due to his disability, MR. FALLS is substantially impaired in several major life activities and requires a wheelchair for mobility.

18.     Mr. Tatum is a qualified individual with a disability under the ADA.  Mr. Tatum is diagnosed with paraplegia and uses a wheelchair for his primary means of mobility.

19.     Upon information and belief, NEW ORLEANS is the political entity which owns the St. Charles Street Car line and the New Orleans bus system.

20.     Upon information and belief, defendant NORTA is the political entity which is responsible for the maintenance and operation of the St. Charles Street Car line and the New Orleans bus system.

21.     Upon information and belief, NORTA has entered into a delegated management contract with TRANSDEV, under which TRANSDEV is obligated to maintain and operate the St. Charles Streetcar Line.

22.     Upon information and belief, NEW ORLEANS, NORTA, and TRANSDEV are jointly

4

responsible for administering, operating, constructing, and maintaining public transportation on St. Charles Avenue and for ensuring that their actions comply with the ADA and the Rehabilitation Act.

23.     DEFENDANTS are jointly responsible for complying with the obligations of the ADA.

24.     All events giving rise to this lawsuit occurred in Orleans Parish, Eastern District of Louisiana.

## COUNT I
## VIOLATION OF TITLE II OF THE ADA

25.     PLAINTIFFS reallege and reaver paragraphs 1-24 as if they were expressly restated herein.

26.     Upon information and belief, DEFENDANTS are public entities, subject to the ADA, and are responsible for the St. Charles Street Car Line.

27.     Upon information and belief, DEFENDANTS develop and provide the services and programs offered by and at the St. Charles Street Car Line.

28.     The St. Charles Streetcar Line provides access to popular destinations including restaurants, shops, universities, parks, and government facilities such as Audubon Park and the Audubon Zoo, and many others.

29.     As stated by NORTA on its website:

> "New Orleans residents and visitors alike particularly love the St. Charles line, which travels from the edge of the French Quarter all the way down beautiful St. Charles Avenue. The views of historic architecture beneath the shade of massive, ancient live oaks convey so much of New Orleans' charm and character. The line also passes by celebrated restaurants, shops, and hotels; some destinations of note include the Garden District, Audubon Park and the Audubon Zoo, and Tulane and Loyola Universities."[2]

---

[2] See Exhibit "B," last accessed on 4/18/2016.

5

30.    The St. Charles Streetcar line is more than just a transportation system. **It is a destination and place of interest in and of itself**. According to the NORTA website:

> "As streetcars glide underneath grand live oaks and past stately mansions, they offer up relaxing views of the beauty, charm and history of New Orleans for little cost. When riders board these historic vehicles they are boarding a piece of movable New Orleans history."[3]

31.    Despite the admitted importance of the St. Charles Streetcar Line, both as a method of transportation and as a popular destination and attraction, the St. Charles Streetcar Line is **completely inaccessible** to persons in wheelchairs.

32.    The green streetcars (hereinafter "Perley Thomas Streetcars") which DEFENDANTS operate on St. Charles Avenue do not contain wheelchair lifts. Further, the embarking and disembarking areas are not equipped with ramps or raised platforms. Therefore, a person in a wheelchair is **completely unable** to access the Perley Thomas Streetcars which DEFENDANTS run on St. Charles Avenue.

33.    DEFENDANTS own and operate a fleet of red streetcars which are equipped with a wheelchair lift to provide access for persons who use a wheelchair.

34.    Upon information and belief, DEFENDANTS could provide PLAINTIFFS with access to the St. Charles Streetcar Line by merely running the occasional red streetcar on the St. Charles Streetcar Line.

35.    Upon information and belief, DEFENDANTS refuse to run their red accessible streetcars on St. Charles Avenue. As alleged below, DEFENDANTS provide an inadequate excuse for their failure to provide a minimum level of accessibility on St. Charles Avenue.[4]

---

[3] See Exhibit "B," last accessed on 4/18/2016.
[4] It is not PLAINTIFFS' allegation that the Perley Thomas Streetcars must themselves be accessible. Instead, it is PLAINTIFFS' argument that DEFENDANTS must provide "program access" to the St. Charles Streetcar Line. PLAINTIFFS believe that this can be accomplished merely by running the occasional red streetcar (e.g. 1 out of 5

36.     In a September 20, 2011 the Gambit Weekly article entitled "A Streetcar Named Denied" (hereinafter "the Gambit Article") NORTA/Veolia spokeswoman Patrice Bell Mercadel stated that "Due to the fact that the line has this historic nature and due to its being designated as the longest continuously operating, unchanged rail line in all of the world, the RTA has a waiver for the line specifically as well as the cars themselves."[5]

37.     On November 20, 2015, the Federal Transportation Authority ("FTA") received a Freedom of Information Act request for "A copy of all waiver(s) and related documents issued by the Federal Transit Administration to the City of New Orleans, Louisiana, and/or the New Orleans Transit Administration, waiving the St. Charles Avenue Streetcar Line's and the St. Charles Avenue Streetcars' obligation to comply WITH THE REQUIREMENTS OF THE Americans with Disabilities Act."[6]

38.     On December 22, 2015, the FTA responded to the November 20, 2015, Freedom of Information Act request. In its response the FTA stated "We have searched our records and find that we do not have any records responsive to your request."[7]

39.     Upon information and belief, despite the statement by DEFENDANTS that they received a "waiver" for the St. Charles Avenues Streetcar Line, no evidence exists that DEFENDANTS were ever granted a waiver of their obligation to comply with the ADA.

40.     As can be seen by DEFENDANTS complete lack of the so-called waiver, DEFENDANTS have actual knowledge that the St. Charles Streetcar Line does not comply with the requirements of the ADA.

---

streetcars) on the St. Charles Streetcar Line.
[5] See Exhibit "C," last accessed on 4/18/2016.
[6] See Exhibit "D."
[7] Id.

41.    Despite actual knowledge that the St. Charles Streetcar Line does not comply with the requirements of the ADA, DEFENDANTS have not brought their program into compliance with the ADA.

42.    According to a December 31, 2014, email sent by John Day, Program Manager of the Policy & Technical Assistance section of the Office of Civil Rights, Federal Transit Administration, "I don't see how putting new streetcars on the St. Charles line would threaten its National Register status, but that's something the National Register would probably have to rule upon..."[8]

43.    Upon information and belief, DEFENDANTS have not submitted a request to the National Register for exemption from running their accessible streetcars on the St. Charles Streetcar Line.

44.    The running of an occasional accessible streetcar on the St. Charles Streetcar Line is reasonable and is necessary to ensure that persons with disabilities are not denied meaningful access to public transportation on St. Charles Avenue.

45.    DEFENDANTS' failure to take steps to bring the St. Charles Streetcar Line into compliance with the ADA, which they know is necessary for the full any equal enjoyment of the St. Charles Streetcar Line by persons with mobility-related disabilities, constitutes intentional discrimination pursuant to Title II of the ADA and the Rehabilitation Act.

46.    Further, even if DEFENDANTS could produce evidence showing that running the occasional accessible streetcar would fundamentally disrupt the historical character of the St. Charles Streetcar Line, DEFENDANTS are in violation of the ADA for having failed

---

[8] See Exhibit "E."

to take any steps to ensure that access to public transportation on St. Charles Avenue is provided to persons with mobility-related disabilities in the "most integrated setting that is reasonably achievable."

47.   Pursuant to the transportation regulations for Title II of the ADA "**For purposes of this part, aids, benefits, and services**, to be equally effective, are not required to produce the identical result or level of achievement for persons with and without a disability, but **must afford persons with a disability equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting that is reasonably achievable**." 49 C.F.R. § 27.7 (2) (emphasis added).

48.   DEFENDANTS have completely failed to run a bus line along St. Charles Avenue or otherwise afford persons with a disability equal opportunity to gain the benefits of public transportation along St. Charles Avenue Streetcar Line in the most integrated setting appropriate.

49.   According to NORTA's website:

   "If you have a disability and would like to travel in the same general direction as the St. Charles Avenue streetcar line, you may find the following bus lines to be useful alternatives:

   - Magazine – #11
   - Freret – #15
   - Leonidas – #32"[9]

50.   These alternative bus lines do not ensure that access is provided in the "most integrated setting that is reasonably achievable."

51.   As shown from an interactive map from NORTA's website, there are frequently between

_____

[9] See Exhibit "F," last accessed on 4/18/2016.

five and eight blocks between the Magazine bus line and St. Charles Avenue Streetcar Line.[10]

52.    As shown from an interactive map from NORTA's website, there are frequently between five and eight blocks between the Freret bus line and St. Charles Avenue Streetcar Line.

53.    Further, while the St. Charles Streetcar Line runes 24 hours a day, the Magazine Street bus line only runs from approximately 6:00 a.m. until 12:00 p.m. and the Freret Street bus line runs from approximately until 6:00 a.m. until 9:30 p.m.

54.    Additionally, as a result of the inaccessible sidewalks and the lack of curb cuts along the routes from the nearby neighborhoods, travel of this five to eight block distance by a person in a wheelchair is often nearly impossible.

55.    While a person using the St. Charles Avenue Streetcar Line would have direct access to "celebrated restaurants, shops, and hotels; some destinations of note include the Garden District, Audubon Park and the Audubon Zoo, and Tulane and Loyola Universities," persons with a disability are restricted to the Freret bus line or the Magazine bus line. Neither of these lines afforded the same opportunity to persons with a disability.

56.    Further, persons who travel on a bus on either Freret Street or Magazine Street would not be afforded the opportunity to view the historic mansions and canopy of oak trees on St. Charles Avenue. Finally, persons with a disability face a temporal restriction on the times during which they can use bus services offered by DEFENDANTS, while persons without a disability do not face the same temporal restriction and are free to use the St. Charles Streetcar Line at any time.

57.    Given the above facts, DEFENDANTS have and continue to discriminate against

---

[10] See Exhibit "G," last accessed on 4/18/2016.

PLAINTIFFS by failing to operate their transportation program in the most integrated setting appropriate.

58.     DEFENDANTS have also discriminated against PLAINTIFFS by failing to comply with the new construction and alteration requirements of the ADA. 49 C.F.R. § 37.43.

59.     DEFENDANTS have performed numerous physical modifications to their St. Charles Streetcar Line stops since the passage of the ADA, but have failed to make these modifications in compliance with the ADA Accessibility Guidelines.

60.     The intersection of S. Claiborne Avenue and S. Carrollton Avenue is the "end of the line" for the St. Charles Streetcar line. Between March of 2011[11] and November of 2013[12] DEFENDANTS installed a new covered pavilion, including benches, which increased the usability of the facility and/or that part of the facility.

61.     Upon information and belief, DEFENDANTS performed numerous additional modifications to the St. Charles Streetcar Line in 2015.

62.     Pursuant to the transportation regulations published for the ADA: "(a)(1) When a public entity alters an existing facility or a part of an existing facility used in providing designated public transportation services in a way that affects or could affect the usability of the facility or part of the facility, the entity shall make the alterations (or ensure that the alterations are made) in such a manner, to the maximum extent feasible, that the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, upon the completion of such alterations." 49 C.F.R. §37.43.

---

[11] See Exhibit "H," last accessed on 1/20/2016.
[12] See Exhibit "I," last accessed on 1/20/2016.

63.     By failing to ensure that persons with disabilities could embark onto the St. Charles Streetcar Line at S. Claiborne Avenue and S. Carrollton Avenue, DEFENDANTS failed to comply with 49 C.F.R. §37.43.

64.     From 2011 through mid 2014, DEFENDANTS replaced many of the wooden streetcar ties with recycled plastic composite ties.

65.     Upon information and belief, this action increased the usability of the St. Charles Streetcar Line by increasing the duration during which the St. Charles Streetcar Line will last and will be able to remain in operation. Therefore, when performing this system-wide alternation, DEFENDANTS were required to perform these alternations in compliance with the requirements of 49 C.F.R. §37.43.

66.     PLAINTIFFS would use the St. Charles Streetcar Line, but are currently deterred from attempting its use as they know that they have no means of embarking or disembarking from the streetcars. Further, PLAINTIFFS will remain deterred from attempting to utilize the streetcar until DEFENDANTS bring the program into compliance or provide an alternative means of access in the most integrated setting appropriate.

67.     DEFENDANTS have discriminated against PLAINTIFFS by denying them full access to the services, programs, and/or activities by failing to make their facilities readily accessible as required by U.S.C. §12132 and its implementing regulations 49 C.F.R. Part 37.1-37.215 *et. seq*.

68.     DEFENDANTS have violated the ADA by providing their services, programs, and/or activities at an inaccessible facility. In determining the site or location of a facility, DEFENDANTS have made site selections that have the effect of excluding individuals

with disabilities from, denying them the benefits of, or otherwise subjecting them to discrimination.

69.     DEFENDANTS have and continue to discriminate against PLAINTIFFS by excluding them from participation in, and denying the benefits of, the services, programs, and/or activities at their Property because of Plaintiff's disability, all in violation of 42 U.S.C. § 12132.

70.     Upon information and belief, PLAINTIFFS and all other individuals similarly situated have been denied access to, and have been denied the benefits of services, programs and/or activities of DEFENDANTS' Property, and have otherwise been discriminated against and damaged by DEFENDANTS because of DEFENDANTS' discrimination, as set forth above. PLAINTIFFS and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. Furthermore, as required by the ADA and other remedial civil rights legislation, to properly remedy DEFENDANTS' discriminatory violations and avoid piecemeal litigation, PLAINTIFFS require a full inspection of DEFENDANTS' Property in order to catalogue and cure all the areas of non-compliance with the ADA.

71.     PLAINTIFFS have retained the undersigned counsel and are entitled to recover reasonable attorneys' fees, costs and litigation expenses from DEFENDANTS pursuant to 42 U.S.C. § 12205.

72.     PLAINTIFFS are suffering irreparable harm.

73.     Pursuant to 42 U.S.C. § 12131, *et seq.*, this Court is provided authority to grant PLAINTIFFS' request for injunctive relief, including an order for DEFENDANTS to

alter the Property to make those facilities, and/or programs, and/or activities, readily accessible and useable to PLAINTIFFS and all other persons with disabilities as defined by the ADA.

## COUNT II
## VIOLATION OF THE REHABILITATION ACT

74.  PLAINTIFFS adopt and re-allege the allegations contained in paragraphs 1-73 as if fully stated herein.

75.  PLAINTIFFS bring this claim against DEFENDANTS, based upon the Rehabilitation Act, 29 U.S.C. §794, *et seq*.

76.  The Rehabilitation Act provides that:

> No otherwise qualified individual with handicaps in the United States, as defined by 7(8) [29 USCS § 706(8)], shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.  29 U.S.C. § 794(a).

77.  Upon information and belief, as set forth herein, DEFENDANTS have violated the Rehabilitation Act by intentionally excluding PLAINTIFFS, solely by reason of their disabilities, from the participation in, and denying them the benefits of, and have otherwise subjected them to discrimination under, DEFENDANTS' programs and activities.

78.  Upon information and belief, a non-exclusive list of DEFENDANTS' violations of the

14

Rehabilitation Act and  discriminatory conduct against PLAINTIFFS are evidenced by:

A.      denying PLAINTIFFS access to, and the opportunity to participate in or benefit from, the aids, benefits, activities, programs, accommodations and services offered at the Property;

B.      by otherwise limiting PLAINTIFFS in the enjoyment of the rights, privileges, advantages and opportunities enjoyed by individuals without disabilities who receive DEFENDANTS' aids, benefits and services;

C.      making facility site or location selections that have the effect of discriminating against individuals with disabilities and excluding them from and denying them the benefits of, and defeating or substantially impairing the accomplishment of the objectives of, the services, programs and activities offered by DEFENDANTS at the Property;

D.      failing to administer services, programs and activities in the most integrated setting appropriate to the needs of PLAINTIFFS;

E.      excluding PLAINTIFFS from participation in, and the benefits of, DEFENDANTS' services, programs and activities as a result of DEFENDANTS' Property being inaccessible to or unusable by PLAINTIFFS; and

F.      failing to design and/or construct new facilities, or make alterations to existing facilities, which are readily accessible to and useable by individuals with disabilities.

79.    Upon information and belief, there are additional, ongoing violations of the

Rehabilitation Act at the Property which PLAINTIFFS are more likely than not going to encounter upon their future visits to the subject premises. PLAINTIFFS brings this action:

A.    to redress injuries suffered as a result of DEFENDANTS' discriminatory actions and inactions set forth herein;

B.    to reasonably avoid further and future injury to PLAINTIFFS as a result of DEFENDANTS' ongoing failure to cease their discriminatory practices as set forth in this action, including correcting violations of the Act;

C.    to ensure DEFENDANTS' Property is accessible as required by the relevant applications of Title II of the ADA;

D.    to be made whole and ensure future compliance; and

E.    to reasonably avoid future ADA and Rehabilitation Act litigation involving the same Property and under the same laws as set forth herein with its concomitant impact on otherwise scarce judicial resources.

80.    Only through a complete inspection of the Property and related facilities, undertaken by PLAINTIFFS and/or their representatives, can all said violations be identified and cured so as to ensure access for the disabled, the primary purpose of this action.

81.    Upon information and belief, DEFENDANTS are the recipient of federal funds.

82.    Upon information and belief, as the recipient of federal funds, DEFENDANTS are liable for damages to PLAINTIFFS as a result of their acts and omissions constituting intentional discrimination.

83.    As set forth above, PLAINTIFFS have been denied access to, and without the relief

requested herein will continue to be denied access to the goods, services, programs, facilities, activities and accommodations offered by DEFENDANTS solely by reason of their disability, and have otherwise been discriminated against and damaged solely by reason of their disability as a result of DEFENDANTS' Rehabilitation Act violations set forth above.

84.     PLAINTIFFS have been obligated to retain undersigned counsel for the filing and prosecution of this action and therefore are entitled to recover attorneys' fees, costs and litigation expenses from DEFENDANTS pursuant to 29 U.S.C. §794(b).

85.     Pursuant to 29 U.S.C. §794(a) this Court is provided authority to grant PLAINTIFFS request for injunctive relief including an order to alter the subject premises, facilities, services, activities, programs and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the Rehabilitation Act; and, granting PLAINTIFFS compensatory damages for DEFENDANT's discriminatory actions.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS prays that:

A.      This Court issue a Declaratory Judgment that determines that DEFENDANTS are in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*;

B.      This Court issue a Declaratory Judgment that determines that the property, programs and activities owned, operated and administered by DEFENDANTS are in violation of the Rehabilitation Act;

C.     This Court grant preliminary and permanent injunctive relief against DEFENDANTS including an order to make all necessary alterations to the Property to make such Property readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require DEFENDANTS to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services;

D.     This Court enter an Order directing DEFENDANTS to alter and modify the Property and its facilities, services, activities, programs and accommodations as appropriate to comply with the ADA and the Rehabilitation Act;

E.     This Court awards monetary damages, pursuant to Title II and 29 U.S.C. § 794a(a)2 for the harmed caused by DEFENDANTS' discriminatory practices;

F.     This Court award of reasonable attorneys' fees, costs and litigation expenses pursuant to 29 U.S.C. § 794a(a)2 and 42 U.S.C. § 12205 and 28 C.F.R. § 35.175; and

G.     Such other relief as the Court deems just and proper, and/or is allowable under Title II of the ADA and the Rehabilitation Act.

                    Respectfully Submitted,

                    THE BIZER LAW FIRM
                    Attorneys for Plaintiff
                    Andrew D. Bizer (LA # 30396)
                    andrew@bizerlaw.com
                    Garret S. DeReus (LA # 35105)
                    gdereus@bizerlaw.com
                    Marc P. Florman (LA # 35128)
                    mflorman@bizerlaw.com
                    3319 St. Claude Ave.
                    New Orleans, LA 70117
                    T: 504-619-9999; F: 504-948-9996

                By:/s/ Andrew D. Bizer
                    ANDREW D. BIZER