UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MITCHELL MIRAGLIA, FRANCIS FALLS and THAD TATUM** | * * * | **CIVIL ACTION NUMBER: 16-CV-03347** |
| **VERSUS** | * * | **SECTION "I" JUDGE LANCE AFRICK** |
| **BOARD OF COMMISSIONERS OF THE NEW ORLEANS REGIONAL TRANSIT AUTHORITY, AND NEW ORLEANS CITY** | * * * * * | **MAGISTRATE "4" JUDGE KAREN ROBY** |

**************************************

## CONSENT DECREE

This Consent Decree ("Agreement") is entered into by all parties to the above-captioned matter to settle and to resolve the claims asserted by the Plaintiffs in the Complaint filed on April 19, 2016.

### I. RECITALS

A. **The Parties.**

1. The Plaintiffs are Mitchell Miraglia, Francis Falls, and Thad Tatum, who assert claims as individuals with a disability, as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.* and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, and who have used and will continue to use public transportation in the City of New Orleans.

2. The Defendants are the Regional Transit Authority ("RTA") and the City of New Orleans ("City").

B. **Jurisdictional Authority.** This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

C.       **Background.**

On April 19, 2016, Plaintiffs filed suit for injunctive and declaratory relief, damages, and attorneys' fees and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12131, et seq. and the Rehabilitation Act of 1973, 29 U.S.C. § 794, with respect to the St. Charles Avenue Streetcar line.  Specifically, Plaintiffs allege Defendants are in violation of (1) 42 U.S.C. § 12147(a) and 49 C.F.R. § 37.43 ("Material Alterations"); (2) 42 U.S.C. § 12147(b) and 49 C.F.R. § 37.47 ("Key Stations"); and (3) 42 U.S.C. § 12132 and 49 C.F.R. § 37. 5(i)(3) ("Reasonable Modifications").

Defendants provide public transportation in the City of New Orleans, including passenger services for buses, paratransit, ferries, and streetcars. Defendants assert that the ADA requires that existing facilities, such as the St. Charles Avenue Streetcar line, be made wheelchair accessible only in limited circumstances.  Defendants have asserted that those limited circumstances have not been triggered, and will not be triggered as the result of this Agreement.

The St. Charles Avenue Streetcar line, listed as a National Historic Landmark, is the oldest continuously operating streetcar line in the world.  While it is a cultural asset used by both New Orleans locals and visitors alike, the streetcar line lacks wheelchair accessibility.

In an effort to evaluate the feasibility of incorporating accessibility along the St. Charles Avenue Streetcar line, the RTA, with the assistance of Manning Architects (engineering firm), Vectura Consulting Services, LLC (traffic engineer) and Rider Levett Bucknall (cost estimator), formally began to evaluate a plan to implement an accessible transit program for the St. Charles Avenue Streetcar line and evaluate an estimated budget for implementation of such a plan ("Manning Accessibility Study").  The Manning Accessibility Study, if implanted in its entirety, would have required the RTA to introduce modern streetcar vehicles from the Riverfront line,

which are equipped with wheelchair lifts, onto the St. Charles line to operate in conjunction with the historic 1920's Perly Thomas streetcars, which cannot be modified. Prior to completing the Manning Accessibility Study, the RTA presented the preliminary findings to the City of New Orleans and other regional transportation stakeholders.

The Manning Accessibility Study was not completed until after the filing of this lawsuit. However, the Manning Accessibility Study is filed in the record of this matter, and Defendants have asserted that it illustrates that a plan to incorporate accessibility on the entire St. Charles Avenue Streetcar line is not feasible, and at the very least, would require municipal, state and federal Governmental Approval Entities to review any accessibility plan.

In an effort to amicably resolve this dispute and to incorporate accessibility and/or program access on the St. Charles Avenue Streetcar line, Defendants and Plaintiffs have agreed to the following terms and conditions and ask the Court for approval of same:

## II.   GENERAL PROVISIONS

A.   Nothing in this agreement, Plaintiffs' Complaint and subsequent pleadings, or the negotiation process shall be construed as an admission or evidence of liability under any federal, state, or municipal law, including, but not limited to, 42 U.S.C. §§ 12132, 12147(a) and 12147(b). Nor is the Defendants' entry into this Agreement an admission by the RTA or the City, or any officer or employee of either entity, that they have engaged in any unconstitutional, illegal, or otherwise improper activities or conduct.

B.   The Parties enter into this Agreement jointly for the purposes of avoiding the burdens of litigation and to support applying to the proper Governmental Approval Entities for the expansion of program access on the St. Charles Avenue Streetcar line in New Orleans. Moreover,

joint entry of this Agreement is in the public interest since it attempts to seek approval for the expansion of program access on the St. Charles Avenue Streetcar line in New Orleans.

  C. This Agreement shall constitute the entire integrated agreement of the Parties. No prior drafts, nor prior or contemporaneous communications, oral or written, shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding.

  D. This Agreement is enforceable only by the Parties and no other person or entity is intended to be a third-party beneficiary of the provisions of this Agreement. Accordingly, no other person or entity may assert any claim or right as a beneficiary or protected class under this Agreement.

  E. The Parties may assert in any action, motion, subpoena or request for disclosure of information the ongoing applicability of a settlement privilege pursuant to Federal Rule of Evidence 408 to all such drafts or communications among the Parties leading to this Agreement.

  F. Upon execution of this Agreement, counsel for the parties shall jointly submit this Agreement to the Court and recommend that it be approved and request that the Court issue an order approving the Agreement. The Agreement is a final resolution of Plaintiffs' claims for injunctive relief, money damages, and attorney's fees and costs in this matter, and the parties, through counsel, shall take all necessary steps that may be required or requested by the Court to use their best efforts to consummate this Agreement. However, the assertions made by the parties in this Agreement are not to be used as any admissions or conclusive evidence in any other legal or equitable proceeding, in any state or federal court of law or in any other type of administrative proceeding.

G. This Agreement will not become effective until the Parties have been notified, pursuant to the Federal Rules of Civil Procedure, of its approval and ratification by the Court. Upon final approval and entry of this Agreement by the Court, this Agreement shall be effective immediately. The parties agree to take the necessary actions to ensure compliance with all of the substantive provisions of this Agreement.

### III. PLAN FOR ACCESSIBILITY AND PROGRAM ACCESS

The parties have agreed to the following plan, all of which is subject to oversight by this Court, in a concerted effort to make the St. Charles Avenue Streetcar line minimally accessible to wheelchair users:

A. <u>Application Process for Approval of Six Accessible Stations.</u>

1. **<u>Governmental Approval Entities.</u>** After conducting engineering and architectural surveys, and within no more than six (6) months of the Court's approval of this Agreement, Defendants shall provide to Plaintiffs a preliminary list of all federal, state and municipal government agencies and authorities that have legal jurisdiction to permit and to approve construction to each of the proposed individual and separate accessible stations on the St. Charles Avenue Streetcar line as it relates to the Six Accessible Stops (defined herein) and to operation of the streetcar(s) (the "Work"), as more fully set forth in Sections III(B) and III(C) herein. If, at any time after the submission of the preliminary list to Plaintiffs, it is determined by Defendants or any federal, state or municipal entity that it has jurisdiction over permits, approvals or review of the Work ("Governmental Approval Entities"), then Defendants shall reasonably put Plaintiffs on notice.

5

2. **Objection to Governmental Approval Entities.** Within ninety (90) days of the preliminary list or subsequent notice, Plaintiffs may notify this Court, at Plaintiffs' own costs, of their objection to the jurisdiction of any Governmental Approval Entity to review, permit or approve an aspect of the Work.

3. **Filing of Application Requirements.**
    i. **Permit Applications/Approval Request Obligation.** Within nine (9) months of approval of the Agreement or within thirty (30) days after any ruling related to an objection provided for in Section III(A)(2), whichever occurs later, the RTA and/or the City as appropriate shall begin to file the respective applications for the Work to the Governmental Approval Entities. The Defendants will file respective applications for the Work with each Governmental Approval Entity in a sequence that is reasonable and in accordance with acceptable professional standards. It is agreed that the Defendants will share in the costs for preparing and filing the applications for Work, as provided for by a separate agreement between the Defendants.
    ii. **Application/Approval Review.** Defendants shall make any and all applications available to Plaintiffs prior to submission. Defendants have no obligation to amend, revise, edit or otherwise alter any application at the request of Plaintiffs.

4. **No Warranty, Representation or Guarantee of Approval.** Defendants cannot and do not warrant, represent or guarantee any approval from any municipal, state or federal governmental agency for the Work. The Defendants'

sole obligation is to file all necessary applications in good faith and make a reasonable and good faith effort to obtain approval.

5. **Administrative Appeals.**  In the event that any of the Governmental Approval Entities deny permission to complete the Work, and/or deny a permit or approval for the Work, in whole or in part, the RTA and/or the City as appropriate shall exhaust any administrative review or appeal provided for pursuant to the Governmental Approval Entities' administrative process.  It is agreed that the Defendants will share in the costs of undertaking the administrative review or appeal process, as provided by a separate agreement between the Defendants.  Defendants are not obligated to file any claims, complaints, lawsuits or any other pleading outside of the Governmental Approval Entities' administrative process, including, but not limited to, initiating any lawsuit in state or federal court.

6. **Amended Accessible Stop Applications.**  In the event that one or more of the Governmental Approval Entities deny an application and subsequent appeal(s) based on the location of any one proposed accessible streetcar station, the parties shall discuss an alternative location for another accessible streetcar station.  In the event the parties are unable to reach a satisfactory resolution of an alternative location for said stop, either party may seek this Court's assistance in resolving the dispute.   If a denial is not related to the physical location of the stop, the Defendants will not be obligated to consider an alternative location.

7

7. **Full or Partial Approval of Applications.** Should the Work be approved as applied for or partially approved by all applicable Governmental Approval Entities, Defendants agree to complete the approved work in accordance with the terms provided for in this Agreement.

8. **Denial of Applications.** Should the Work be denied by any Governmental Approval Entity, and upon completion of all affirmative obligations provided for in Section III(A), Defendants shall not be obligated to pursue any further action to complete the portion of the Work that was denied, unless or until the Governmental Approval Entity reverses its position as a result of action taken by Plaintiffs pursuant to Section III(A)(9). In the event any Governmental Approval Entity denies an application for the Work and Defendants exhaust their affirmative obligations provided for in Section III(A), Defendants shall provide Plaintiffs with written notice of the Governmental Approval Entity that denied the application for the Work and a copy of all non-privileged documents filed with the administrative review or appeal.

9. **Further Legal Action Against the Governmental Approval Entities.** In the event any Governmental Approval Entity denies the application for the Work, and following Defendants' exhaustion of their affirmative obligations provided for in Section III(A), it is understood that Plaintiffs may, but are in no way obligated, to institute legal action against the appropriate Governmental Approval Entity. For the purpose of this Agreement, any such legal action shall be instituted within one (1) year of the date Defendants inform Plaintiffs by written notice of Defendants' exhaustion of their affirmative obligations

provided for in Section III(A). If Plaintiffs do not institute any such legal action within one (1) year of the date Defendants inform Plaintiffs by written notice of Defendants' exhaustion of their affirmative obligations provided for in Section III(A), then Defendants shall have satisfied their obligations under this Agreement and have no further affirmative obligations under this Agreement. In the event the Governmental Approval Entity voluntarily reverses its position, settles with Plaintiffs, or is cast in Judgment by a Court or Administrative Tribunal, Defendants shall perform the Work, as more fully set forth in Sections III(B) and III(C) herein. In the event this Section is triggered, the parties shall amicably discuss appropriate adjustments to the time frames for performance of Work.

B. **The Six (6) Accessible Streetcar Stations.**

1. In determining the agreed upon number of accessible streetcar stations, the Parties considered several factors, including, but not limited to:

    i. Manning Accessibility Study;

    ii. Nicholas Heybeck's Expert Report;

    iii. EHT Traceries' Expert Report;

    iv. Anticipated municipal, state and federal Governmental Approval Entity review;

    v. Implementation of new strategic accessible streetcar stations and program access on the St. Charles Avenue Streetcar line;

    vi. Feasibility of construction of new accessible streetcar stations and program access on the St. Charles Avenue Streetcar line;

9

    vii.    The public's interest to have new accessible streetcar stations and program access on the St. Charles Avenue Streetcar line;

    viii.    Existing Complimentary Paratransit Services pursuant to ADA regulations; and

    ix.    Expenses associated with incorporation of new streetcar stations on the St. Charles Avenue Streetcar line.

2. In consideration of these factors, and other factors developed prior to and during this litigation, the parties have identified six (6) accessible streetcar stations on the St. Charles Avenue Streetcar line that Defendants will seek approval to construct and as defined herein as the Work. These six (6) accessible stations will be located at or near the following intersections:

- Carondelet Street and Canal Street (end of the line);
- St. Charles Avenue and Jackson Avenue;
- St. Charles Avenue and Louisiana Avenue;
- St. Charles Avenue and Napoleon Avenue;
- South Carrolton Avenue and South Claiborne Avenue (end of the line); and
- One stop in or near the area commonly referred to as the "Riverbend", to be determined by Defendants, located along St. Charles Avenue between South Claiborne Avenue (end of the line) and Napoleon Avenue.

3. At each of the six (6) individual and distinct locations, Defendants shall construct an ADA accessible streetcar station as approved by the Governmental Approval Entities, as included in the definition of the Work.

4. **Construction Period.** If all required Governmental Approval Agencies approve the Work, Defendants shall have nine (9) months to solicit bids and begin construction on the Work (the "Bidding Timeframe") from the date of receiving written notice of its final approval and/or permission. Upon breaking ground, the completion of the Work shall be performed in accordance with the schedule of Defendants' contractors.

C. **Future Operation of the St. Charles Streetcar(s).**

1. Within three (3) months of the substantial completion of the Work, Defendants will operate one (1) fully-accessible streetcar on the St. Charles Avenue Streetcar line.

2. To the extent the technology is reasonably available, Defendants will utilize a "Tracking App" so that patrons with disabilities can access the location of the accessible streetcar(s).

3. Two (2) years after the Work is completed, Defendants shall add a second fully-accessible streetcar to the St. Charles Avenue Streetcar line if the ridership data (the "Data") supports that a second fully-accessible streetcar is needed to provide meaningful access to persons with disabilities.

5. During the construction of the six (6) streetcar stations, Defendants shall provide Plaintiffs the proposed Data methodology that they will use to determine if a second streetcar is to be operated on the St. Charles Avenue Streetcar line (the "Data Methodology"). If Plaintiffs do not agree with the Defendants' Data Methodology, Plaintiffs may object to the Court for review and determination.

4. Once there is an agreement on the Data Methodology, the Data will be collected and analyzed during the first eighteen (18) months from the commencement of

11

      operation of one (1) accessible streetcar on the St. Charles Avenue Streetcar line. Defendants shall then analyze the Data and determine whether a second fully-accessible streetcar is needed.

5. In the event Defendants determine that the Data does not support that a second fully-accessible streetcar is necessary based on the Data Methodology, Defendants shall share the Data, the methods the Data was collected, and the metrics utilized in interpreting the Data and determining the need for a second fully-accessible streetcar. Plaintiffs may object to the Court to review and determine whether Defendants' determination of whether the Data Methodology used to evaluate the need for a second accessible streetcar was reasonably justified.

## IV.   MONITORING, DISPUTE RESOLUTION PROCESS, AND ENFORCEMENT

The parties agree to and shall request that this Court retain jurisdiction over this matter solely for the purposes of enforcement of the terms and conditions of this Agreement. Further, in the event of a material breach of the terms contained herein, the aggrieved Party shall be entitled to obtain injunctive or other relief as stated in this Agreement.

In the event any party fails to comply with a material term of this Agreement, the parties agree to attempt in good faith to resolve the disagreement according to the following Dispute Resolution Process:

1. If Plaintiffs believe that the Defendants failed to fulfill an obligation under this Agreement, then Plaintiffs shall, prior to initiating any court proceedings to remedy such failure, give written notice to Defendants which sets forth with specificity the details of the alleged material breach of this Agreement.

2. Defendants shall have forty-five (45) days from the date of such written notice to respond in writing by denying that the alleged breach has occurred, or by accepting (without necessarily admitting) the allegations of noncompliance and proposed steps that the Defendants will take, and by when, to cure the alleged breach.

3. If Defendants fail to respond within forty-five (45) days or deny that the alleged breach has occurred, and after the parties confer in good faith, then Plaintiffs may seek an appropriate judicial remedy other than contempt.

4. If the Defendants agree to cure the alleged breach, the Defendants shall have an additional ninety (90) days, unless a longer period is agreed to by the parties, to cure, or provide an explanation to Plaintiffs for any delays or inability to cure within the fixed time period. The Defendants may seek additional time from the Court, if appropriate. If the parties fail to reach agreement on a plan for curative action, then Plaintiffs may seek an appropriate judicial remedy.

In the event Defendants fail to comply with a material term of this Agreement, and in the event the disagreement cannot be worked out informally pursuant to the Dispute Resolution Process herein, Plaintiffs shall have the right to bring a motion enforcing this Agreement before the District Court.

In any action to enforce this Agreement, the prevailing party shall be reimbursed their reasonable fees, expenses and costs in accordance with 42 U.S.C. § 12205 and applicable law.

## V. DAMAGES AND ATTORNEY'S FEES/COSTS

Defendants have agreed to pay Plaintiffs and their counsel damages and attorneys' fees pursuant to a separate confidential agreement, which include attorneys' fees, costs and litigation expenses pursuant to 29 U.S.C. § 794a(a)2, 42 U.S.C. § 12205, and 28 C.F.R. § 35.175.

## VI. RELEASE OF CLAIMS

The Plaintiffs hereby release the Defendants (and the defendants' parent companies, subsidiaries, divisions, political agencies, political subdivisions, affiliates, related companies, predecessors, successors, heirs, executors, administrators, assigns, members, shareholders, directors, officers, employees, agents, attorneys, and lessors of and lessees at the premises or property in question) from any and all claims, causes, damages, demands, liabilities, equities and any and all other claims pursuant to the ADA and the Rehabilitation Act regarding the St. Charles Avenue Streetcar line itself or any services provided on the St. Charles Avenue Streetcar line or on St. Charles Avenue, including, but not limited to, alleged violations of (1) 42 U.S.C. § 12147(a) and 49 C.F.R. § 37.43 ("Material Alterations"); (2) 42 U.S.C. § 12147(b) and 49 C.F.R. § 37.47 ("Key Stations"); and (3) 42 U.S.C. § 12132 and 49 C.F.R. § 37. 5(i)(3) ("Reasonable Modifications"), 29 U.S.C. § 794a(a)2, 42 U.S.C. § 12205, and 28 C.F.R. § 35.175, (and any other federal, state or local law governing physical access features for persons with disabilities at public accommodations) and all of the claims that were asserted or could have been asserted in the above-captioned action by Plaintiffs, *provided that*, this release shall in no way limit the Plaintiffs' or the Court's ability to monitor and enforce the Defendants' compliance with the terms of this Judgment. Nothing herein should be construed as a waiver or release of any claim the Plaintiffs may have against any property, program, service, or accommodation other than the St. Charles Avenue Streetcar line.

Nothing in this Agreement shall be construed as a waiver of any claims which have not yet arisen, but may arise in the future against any entity or person, including but not limited to the Federal Transit Authority, the State of Louisiana, the RTA, the City of New Orleans, or the New

Orleans City Council. This Agreement shall not be used by any party or non-party to claim that Plaintiffs have waived any claims which arise after the date of the execution of this Agreement.

## VII. CONTINUING JURISDICTION BY COURT

The Court shall have continuing jurisdiction over this matter, until the Court grants a motion seeking dismissal of the matter.

Respectfully submitted this 26th day of April, 2017.

_____
REGIONAL TRANSIT AUTHORITY
Through Sharonda A Williams, Chair


_____
CITY OF NEW ORLEANS
Through _____


_____
Francis Falls, Plaintiff


_____
Thad Tatum, Plaintiff


_____
Mitchell Miraglia, Plaintiff

Upon due consideration of the Agreement between the parties, the Court having been fully advised in the premises, and pursuant to Fed. R. Civ. P. 41(a), it is hereby,

Orleans City Council. This Agreement shall not be used by any party or non-party to claim that Plaintiffs have waived any claims which arise after the date of the execution of this Agreement.

### VII.    CONTINUING JURISDICTION BY COURT

The Court shall have continuing jurisdiction over this matter, until the Court grants a motion seeking dismissal of the matter.

Respectfully submitted this _____ day of _____, 2017.

_____
REGIONAL TRANSIT AUTHORITY
Through _____

*[signature: Cherrell S. Taplin]*

CITY OF NEW ORLEANS
Through *Cherrell S. Taplin*

_____
Francis Falls, Plaintiff

_____
Thad Tatum, Plaintiff

_____
Mitchell Miraglia, Plaintiff

Upon due consideration of the Agreement between the parties, the Court having been fully advised in the premises, and pursuant to Fed. R. Civ. P. 41(a), it is hereby,

Orleans City Council. This Agreement shall not be used by any party or non-party to claim that Plaintiffs have waived any claims which arise after the date of the execution of this Agreement.

### VII.   CONTINUING JURISDICTION BY COURT

The Court shall have continuing jurisdiction over this matter, until the Court grants a motion seeking dismissal of the matter.

Respectfully submitted this _____ day of _____, 2017.

_____
REGIONAL TRANSIT AUTHORITY
Through _____

_____
CITY OF NEW ORLEANS
Through _____

*[signature]*
_____
Francis Falls, Plaintiff

*[signature]*
_____
Thad Tatum, Plaintiff

*[signature]*
_____
Mitchell Miraglia, Plaintiff

Upon due consideration of the Agreement between the parties, the Court having been fully advised in the premises, and pursuant to Fed. R. Civ. P. 41(a), it is hereby,

15

ORDERED that the Court APPROVES and RATIFIES this Agreement. It is hereby ORDERED that Plaintiffs' claims are hereby dismissed, provided that this Court shall retain jurisdiction to enforce the terms and conditions of the Consent Decree.

_____
UNITED STATES DISTRICT COURT
JUDGE LANCE M. AFRICK