MINUTE ENTRY
ROBY, M.J.
May 30, 2018

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MITCHELL MIRAGLIA, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-03347** |
| **NEW ORLEANS CITY, ET AL.** | **SECTION: "I" (4)** |

LAW CLERK:          Brian Trepanier
COURT RECORDER:     Sandra Simlin w/ Rebecca Gonzalez

Appearances:    **Andrew Bizer** for Plaintiffs.
**Corwin St. Raymond** for City of New Orleans.
**Cole Callihan** for Board of Commissioners of the New Orleans Regional Transit Authority.
**Olivia Truong** for City of New Orleans.
**Sundiata Haley** for Board of Commissioners of the New Orleans Regional Transit Authority.

## MINUTE ENTRY AND ORDER

Before the Court is a **Motion to Enforce Consent Decree (R. Doc. 79)** filed by the Plaintiffs. The motion is opposed. R. Doc. 81, 82. Oral argument was heard on May 30, 2018.

**I.    Background**

On April 19, 2016, Plaintiffs filed suit for injunctive and declaratory relief, damages, and attorneys' fees and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* and the Rehabilitation Act of 1973, 29 U.S.C. § 794, with respect to the St. Charles Avenue Streetcar line. Specifically, Plaintiffs alleged the Defendants are in violation of (1) 42 U.S.C. § 12147(a) and 49 C.F.R. § 37.43 ("Material Alterations"); (2) 42 U.S.C. § 12147(b) and 49 C.F.R. § 37.47 ("Key Stations"); and (3) 42 U.S.C. § 12132 and 49 C.F.R. § 37. 5(i)(3) ("Reasonable Modifications").

**MJSTAR: 00:16**

The parties entered into an agreement to resolve the dispute amicably and which resulted in a consent judgment issued by the District Court in this matter. The agreement included: (1) the application process for the approval of six wheelchair accessible stations; (2) the agreement of the six stations; (3) the construction period; and (4) future operation of the St. Charles Streetcars. The Consent Decree issued by the Court also contained monitoring provisions, the dispute resolution process, and enforcement provisions. It also included a release of claims and continuing jurisdiction of the Court in this matter. R. Doc. 77.

The instant motion to enforce the Consent Decree was filed by the Plaintiffs stating that the Defendants have previously breached the Consent Decree on two prior occasions and a third breach has occurred. R. Doc. 79. Plaintiffs contend that the Defendants have failed to submit the applications required to initiate the accessibility changes to the St. Charles Avenue Streetcar Line and have failed to cure their non-compliance. Plaintiffs ask the Court to order the Defendants to file the respective applications for the work to the Governmental Approval Entities and make all applications available to the Plaintiffs prior to submission, provide periodic updates to the Plaintiffs and the Court on a monthly basis, and pay the reasonable attorney's fees associated with monitoring the Defendants' non-compliance associated with the past breaches and any other future breaches.

Defendant RTA Board of Commissioners filed an opposition arguing the RTA is compliant with the Consent Decree, the Plaintiffs' motion is premature, and a status conference may benefit the parties. R. Doc. 81. The City of New Orleans also filed an opposition arguing that the first and second breaches have been resolved and are irrelevant and adopts the RTA's argument as to why the motion should be denied. R. Doc. 82.

## II.     Standard of Review

It is well-settled that a federal court has the inherent authority to enforce its own orders, including consent decrees agreed to by parties and approved by the Court. *See, e.g. United States v. Alcoa, Inc.,* 533 F.3d 278, 287 (5th Cir. 2008). Indeed, "[f]ederal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." *Frew v. Hawkins,* 540 U.S. 431, 440 (2004). "Once approved, the prospective provisions of the consent decree operate as an injunction." *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir.1983) (citing *Plummer v. Chemical Bank,* 668 F.2d 654, 659 (2d Cir. 1982); *Carson v. Am. Brands,* 450 U.S. 79, 84 n. 9 (1981); *United States v. City of Miami,* 664 F.2d 435, 441 (5th Cir. 1981) (en banc)).

"[D]istrict courts have wide discretion to enforce decrees and to implement remedies for decree violations." *Alcoa,* 533 F.3d at 286. "To establish civil contempt, the moving party bears the burden of proving by 'clear and convincing' evidence that the alleged contemnor was aware of and violated a 'definite and specific order requiring him to perform or refrain from performing a particular act or acts.'" *Shafer v. Army & Air Force Exch. Serv.,* 376 F.3d 386, 398 (5th Cir. 2004) (quoting *Travelhost, Inc. v. Blandford,* 68 F.3d 958, 961 (5th Cir. 1995).

Clear and convincing evidence is evidence sufficient to produce a "'firm belief or conviction as to the truth of the allegations sought to be established....'" *In re Medrano,* 956 F.2d 101, 102 (5th Cir. 1992) (quoting *Cruzan v. Director, Mo. Dep't of Health,* 497 U.S. 261, 285 (1990)). Once a party has established contempt under a consent decree, a district court has broad discretion to fashion appropriate remedies to effectuate the decree. *Test Masters Educ. Serv's, Inc. v. Singh,* 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 228 F.3d 574, 585 (5th Cir. 2000)). "These remedies need not match those requested by a party or

originally provided by the court's earlier judgment." *Alcoa,* 533 F.3d. at 288 (citations omitted); *see also Test Masters,* 428 F.3d at 578–79 (approving a district court's injunction that went beyond the terms of the court's earlier order because the subsequent injunction was necessary to enforce the prior order).

**III.    Analysis**

Plaintiffs argue that Paragraph III of the Consent Decree requires the City of New Orleans to "begin to file the respective applications for the Work to the Governmental Approval Entities" within nine (9) months of approval of the Agreement. The Consent Decree also states that, "[d]efendants shall make any and all applications available to Plaintiffs prior to submission." R. Doc. 77. The Plaintiffs state that the Consent Decree was approved on April 26, 2017, which made the deadline for the filing of applications January 26, 2018. R. Doc. 79-1. Plaintiffs contend they sent an email to the Defendants on March 26, 2018, giving notice of the failure to file the applications and forward the applications to the Plaintiffs. The Plaintiffs argue that they requested to meet and confer and RTA's attorney called and informed Plaintiffs' attorney that the transition of a new administration was the cause of the delay. The City's attorney sent an email on March 27, 2018, stating that they were hoping to get some answers soon on the Streetcar matter. Plaintiffs state that this was the last they heard from the City of New Orleans.

The Plaintiffs contend that it has been forty-five (45) days from the notice of the third breach and the Defendants have failed to substantively respond, have not denied the breach, and have not agreed to cure the breach. Further, Plaintiffs state that they have not been provided an explanation for the breach and the officials who were a party to the Consent Decree left office on May 8, 2018, and it was their responsibility make the applications before any transition occurred.

Plaintiffs argue that Paragraph IV of the Consent Decree states that, "In the event defendants fail to comply with a material term of this Agreement, and in the event the disagreement cannot be worked out informally pursuant to the Dispute Resolution Process herein, Plaintiffs shall have the right to bring a motion enforcing the Agreement before the District Court." R. Doc. 77. Plaintiffs argue the Defendants have failed to meaningfully participate in the dispute resolution process of the Consent Decree requiring the intervention of the Court in enforcing the terms of the Consent Decree.

The Plaintiffs seek an order of the Court requiring the Defendants to file the respective applications for the work to the Governmental Approval Entities and make those applications available to the Plaintiffs prior to submission, provide periodic updates to the Plaintiffs and Court on a monthly basis, and the payment of Plaintiffs' attorneys fees associated with monitoring Defendants' non-compliance associated with this and any future breaches. Plaintiffs contend that the Defendants are ignoring the clear mandate and requirements of the Consent Decree and there is no indication that Defendants have even begun to draft the application letters demonstrating a blatant disregard for the obligations of the Consent Decree. Plaintiffs seek updates because the Defendant have failed to meet every single deadline thus far and have no faith in the Defendants' ability to meet their obligations going forward. Finally, Plaintiffs seek reasonable attorney's fees because they do not receive outside grants or funding, but rather rely on the fee shifting nature of the ADA, but are now being required to not only monitor, but force the Defendants to live up to their obligations under the Consent Decree. They argue the Consent Decree provides the prevailing party shall be reimbursed reasonable fees, expenses, and costs and therefore seek awards for the excess work they've done with respect to this breach and future breaches.

The RTA opposes the motion arguing that it is in full compliance with the Consent Decree. R. Doc. 81. It states that logistical issues of one party affect the approval process for all parties. Defendant state they provided a list of the governmental agencies that have jurisdiction to permit and approve construction on December 2, 2017. The list contains 5 agencies Defendants will need to request approval from as well as 4 entities with which Defendant may need to coordinate. The RTA does not deny they have not submitted approval applications, but state that the delay is due to a number of concrete issues involving the allocations of public funds, a change in directorship within the Department of Public Works, and a transition in the administrations within the City of New Orleans.

The RTA states that it is taking an active role in moving the process forward including a vote on May 22, 2018, to approve an engineering firm—Infinity Engineering—to assist with preparing and submitting the necessary paperwork to the administrative agencies.

The RTA also contends that the instant motion is premature because the Plaintiffs have failed to follow the Consent Decree's step-by-step resolution process prior to involving the Court. It argues that the good faith conferral has not occurred. It contends Plaintiffs have chosen to file a motion rather than openly discuss the very real and temporary hurdles facing the approval process.

Finally, the RTA states that a status conference may benefit the parties if they are unable to informally discuss a revised timeline or if the Court believes it may be of some assistance in this process. The City of New Orleans adopted the RTA's opposition. R. Doc. 82. The City further states that the Plaintiffs' identification of the "first breach" and "second breach" is irrelevant as those issues were resolved.

During oral argument the Court was informed that the engineering firm, Infinity Engineering, was beginning the preliminary engineering work and other work required to prepare

the applications necessary to the Governmental Approval Agencies. The Court was unsatisfied with the arguments advanced by the Defendants in the matter and was unpersuaded that steps were being taken by the Defendants to comply with the Consent Decree. As a result, the Court ordered RTA's counsel to call Infinity Engineering to determine how long it would take for them to develop the information necessary for the applications that were required under the Consent Decree.

After conducting the call, the RTA informed the Court that there was a three-step process that Infinity would perform and the timetable for each step. The RTA stated that the process would be: (1) Surveying, which would take four weeks; (2) Conceptual development, which would take eight weeks; and (3) Review and applications, which would take another four weeks. The applications would therefore be submitted in sixteen weeks. The Court expects that the City of New Orleans, the RTA, and Infinity Engineering will adhere to the representations made and that the applications shall be completed in that sixteen (16) week period beginning from the signing of this order. The Court also notes that prior to the applications being sent to the Governmental Approval Entities the Defendants should adhere to the Consent Decree's requirement of providing them to the Plaintiffs before submission.

Based on the representations to the Court of the timeline necessary to prepare and submit the applications to the Governmental Approval Entities, the Court denies the motion to enforce the Consent Decree. The Court finds that holding a status conference in order to verify whether the Defendants and the engineering firm are on track to meet the timelines stated during the hearing is appropriate. Therefore, the Court orders that a status conference in this matter shall be held at 10:30 a.m. on August 29, 2018 in the undersigned United States Magistrate Judge's Chambers located at 500 Poydras Street, Room B-437, New Orleans, Louisiana.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the Plaintiffs' **Motion to Enforce Consent Decree (R. Doc. 79)** is **DENIED** in light of the sixteen (16) week timeline represented by the RTA to the Court required to prepare and submit the applications to the Governmental Approval Entities.

In light of the Court's ruling **IT IS FURTHER ORDERED** the Plaintiffs' **Motion for Leave to File Reply in Support of Plaintiffs' Motion to Enforce Consent Decree (R. Doc. 84)** is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that a status conference in this matter shall be held at **10:30 a.m. on August 29, 2018**, in the undersigned United States Magistrate Judge's Chambers located at 500 Poydras Street, Room B-437, New Orleans, Louisiana.

New Orleans, Louisiana, this 1st day of June 2018.

*[signature]*

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**